**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1739-WJM-KMT

DAMEION MOORE,

    Petitioner,

v.

JOSEPH LENGERICH, Warden, Buena Vista Minimum Center, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER DISMISSING 28 U.S.C. § 2254 PETITION FOR LACK OF JURISDICTION

    Petitioner Dameion Moore ("Moore") is a prisoner in the custody of the Colorado Department of Corrections ("CDOC"). He seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions in state court for possessing and distributing the same quantum of illegal narcotics violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. (ECF No. 1.) On October 10, 2017, United States Magistrate Judge Kathleen M. Tafoya issued a recommendation that the Court deny Moore's petition ("Recommendation"). (ECF No. 30.) Moore has filed an objection ("Objection"). (ECF No. 31.) Respondents filed no response.

    For the reasons set forth below, the Court finds that it lacks jurisdiction over Moore's petition because his eighteen-month sentence imposed on the possession count had already been served when he filed the petition. Alternatively, the Court agrees with the Magistrate Judge that Moore is not entitled to habeas relief.

## I. BACKGROUND

In Colorado state court, a jury convicted Moore of possessing a controlled substance in violation of Colorado Revised Statutes § 18-18-403.5, and also of distributing a controlled substance in violation of Colorado Revised Statutes § 18-18-405. (ECF No. 1 at 2.) Although there was some question in state-court proceedings whether the jury had based its convictions on separate incidents (*i.e.*, possessing a particular quantum of drugs but distributing a different, discrete quantum of drugs) (*see* ECF Nos. 1-4, 1-7), Respondents no longer dispute that the jury convicted for possessing and distributing the same quantum of drugs (*see* ECF No. 26). The state trial judge imposed a sentence of eighteen months on the possession count, and a concurrent sentence of ten years on the distribution count. (ECF No. 1-1 at 2.)

Moore appealed to the Colorado Court of Appeals ("CCA"), arguing that his double-conviction and double-sentencing for the same act violated the U.S. Constitution's Double Jeopardy Clause. (*See* ECF No. 1-3.) For reasons discussed in more detail below, the CCA disagreed, finding that the Colorado Legislature intended distribution and possession to be charged and punished separately, and such legislative intent nullified any Double Jeopardy objection. (*See* ECF No. 1-1 at 3–5.)

About two weeks later, Moore petitioned the CCA for rehearing. (ECF No. 5.) A few days after Moore filed that petition, the Colorado Supreme Court issued *People v. Davis*, 352 P.3d 950 (Colo. 2015), which addressed an almost identical issue and held that Double Jeopardy barred the double convictions—thus calling into doubt whether the CCA had reached the correct conclusion in Moore's case about the Colorado Legislature's intent. The CCA nonetheless denied the petition for rehearing, and, on

April 18, 2016, the Colorado Supreme Court denied certiorari, with two justices dissenting. (ECF No. 1-2.)

Moore did not institute state post-conviction collateral review proceedings, but instead filed his § 2254 petition in this Court on July 7, 2016. (ECF No. 1.) Respondents have explicitly waived any objection they may have based on Moore's choice not to pursue his claims through state collateral review. (*See* ECF No. 9 at 2; ECF No. 13 at 1.)

On October 10, 2017, Judge Tafoya issued her Recommendation, reasoning that this Court could not go behind the CCA's conclusion that the Colorado Legislature had authorized separate convictions and punishments for possession and distribution. (ECF No. 30 at 7.) Moore timely filed his Objection. (ECF No. 31.)

## II. STANDARD OF REVIEW

When a Magistrate Judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." The Court has therefore reviewed all the filings to date and has reached its own independent conclusion in this matter. That review, however, prompted the Court to question whether it has subject matter jurisdiction, as explained below. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited." (citation omitted)).

## III. ANALYSIS

**A.  General Standards of § 2254 Review**

Moore seeks a writ of habeas corpus under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This statutory scheme can be broken out into a series of questions:

1. Is the petitioner in custody pursuant to the judgment of a state court?

2. Was the claim on which the petitioner bases his or her petition adjudicated on the merits in state court—or in other words, did the petitioner raise his or her claim in state post-conviction proceedings?

3. Did the state court's decision on the petitioner's claim contradict or unreasonably apply federal law as established clearly by the United States Supreme Court?  Or, alternatively, did the state court's decision on the petitioner's claim rely on an unreasonable determination of facts in light of the evidence presented to the state court?

The parties' filings and the Recommendation address only the first variant of the third question: whether the state court contradicted or unreasonably applied clearly established federal law.  There is a serious question, however, regarding the first question: whether Moore is "in custody" for purposes of his § 2254 petition.

4

**B.     "In Custody" in the Present Circumstances**

"The custody requirement [under § 2254] is jurisdictional." *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009). Whether a § 2254 petitioner is "in custody" for jurisdictional purposes is judged by: (1) identifying the conviction the petitioner challenges and then (2) inquiring whether the petitioner was "incarcerated by reason of [the challenged conviction] at the time the petition was filed." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Here, Moore is challenging his possession conviction as unconstitutionally duplicative of his distribution conviction. If the Court were to agree with Moore's Double Jeopardy argument, the result under Colorado law would be that his possession conviction (and its eighteen-month sentence) would merge into his distribution conviction, leaving only the distribution conviction (and its ten-year sentence). *See Davis*, 352 P.3d at 958 ("When a jury convicts a defendant for both possession and distribution of the same quantum of drugs, then, the trial court should merge the possession conviction into the distribution conviction for sentencing."). This reality may suggest mootness, but that is a separate inquiry. *See Spencer*, 523 U.S. at 7. The Court points out that Moore will serve a ten-year sentence no matter what, *not* to raise the issue of mootness, but rather to emphasize that his Double Jeopardy challenge cannot be considered a simultaneous attack on both his possession and distribution convictions. His distribution conviction will stand, unaltered, regardless of what this Court does with his possession conviction. So, to repeat, the conviction at issue is Moore's possession conviction and the accompanying eighteen-month sentence.

The judgment of conviction entered on December 13, 2012. (*See* ECF No. 1

at 1.) Moore filed his § 2254 petition in this Court on July 7, 2016—three years, six months, and twenty-four days later. By that time, Moore's eighteen-month possession sentence surely had been served.

If a habeas petitioner challenges a sentence that has been fully served, the petitioner is *not* "in custody" with respect to that sentence even though the petitioner continues to serve time under a concurrently imposed, unchallenged sentence. *Mays*, 580 F.3d at 1137, 1140–41. Thus, when Moore filed this § 2254 action, he was not "in custody" for purposes of the statute, and the Court lacked jurisdiction to hear his Double Jeopardy challenge to the possession conviction. His petition should therefore have been dismissed at the outset on this basis.

**C.     Merits Analysis**

Even if the Court possessed jurisdiction, Moore's petition would still fail on its merits for the reasons explained below.

    1.     <u>Contradiction/Unreasonable Application Standard</u>

Whether a state court decision contradicted or unreasonably applied clearly established federal law requires several inquiries of its own:

First, does the petitioner seek to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final? *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. More specifically,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or

6

> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

Assuming clearly established law is at stake, the next question is whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established
> federal law if: (a) the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases; or (b) the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from that
> precedent. . . .
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. Additionally, we have
> recognized that an unreasonable application may occur if the
> state court either unreasonably extends, or unreasonably
> refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.

*House*, 527 F.3d at 1018 (internal quotation marks and citations omitted; certain alterations incorporated).

This is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411.

"[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).

7

> Evaluating whether a rule application was unreasonable
> requires considering the rule's specificity. The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations. It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted; certain alterations incorporated).

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (internal quotations marks omitted). Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

With these standards in mind, the Court turns to Moore's arguments.

2. <u>Double Jeopardy Generally</u>

Understanding Moore's Double Jeopardy challenge requires understanding the current state of Supreme Court law on the Double Jeopardy Clause.

The Fifth Amendment to the United States Constitution states that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." For many years, courts inquiring whether this proscription had been violated followed the "*Blockburger* standard," named for *Blockburger v. United States*, 284 U.S. 299 (1932). There, the Supreme Court held, "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

8

there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

Later, however, the Supreme Court explained that *Blockburger* established only a federal-law "rule of statutory construction":

> The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.

*Whalen v. United States*, 445 U.S. 684, 691–92 (1980). Thus, Congress may impose multiple punishments for the same act (*e.g.*, by prohibiting that act through separate statutes) so long as Congress's intent to do so is clear. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981).

*Blockburger*, however, "is not a constitutional rule." *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("*Hunter*"); *see also id.* ("Thus far, we have utilized [*Blockburger*] only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear."). If a state legislature

> specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69.

This is the clearly established Supreme Court precedent applicable to the case at hand. Moore must establish that the CCA's decision in his case "was contrary to, or involved an unreasonable application of," this precedent. 28 U.S.C. § 2254(d)(1).

9

### 3. Application to Moore's Case

In deciding Moore's appeal, the CCA announced the following legal standard: "an accused may be convicted of multiple offenses arising out of the same transaction if the General Assembly makes clear its intent to punish the same conduct with more than one conviction and sentence. *People v. Abiodun*, 111 P.3d 462, 465 (Colo. 2005)." (ECF No. 1-1 at 3.) The CCA's citation to *Abiodun* is important for at least two reasons.

First, *Abiodun* held that, "[a]s long as the general assembly makes clear its intent to punish the same offense with more than one conviction and sentence, it is not constitutionally prohibited from doing so." 111 P.3d at 465 (citing *Hunter*, 459 U.S. at 368–69). By citing this portion of *Abiodun*, the CCA identified the correct legal rule, ultimately drawn from *Hunter*.

Second, *Abiodun* addressed a question very similar to the one faced by the CCA: whether possession and distribution of the same quantum of drugs counts as one crime or two. *See Abiodun*, 111 P.3d at 463–64. Importantly, at the time *Abiodun* was decided, possession and distribution were both proscribed in the *same statutory section*, namely, Colo. Rev. Stat. § 18-18-405(1)(a) (2000). *See Abiodun*, 111 P.3d at 464, 466. This was a crucial factor in the Colorado Supreme Court's ultimate conclusion that the Colorado Legislature did not intend possession and distribution to be punished as separate crimes. *See id.* at 466 ("The entire range of conduct is criminalized in a single subsection of a statute entitled simply, 'Unlawful distribution, manufacturing, dispensing, sale, or possession.' (footnote omitted)); *id.* at 468 ("the general assembly has . . . demonstrated an awareness that it can make clear its intent to proscribe related activities as different crimes by naming each and segregating them

10

in the criminal code, when it wishes to do so").

This latter point was important to the CCA's analysis in Moore's case. After *Abiodun*, but before Moore committed the conduct for which he was later convicted in this case, the Colorado Legislature removed the simple possession offense from § 18-18-405 and placed it by itself in a new location, § 18-18-403.5. *See* 2010 Colo. Legis. Serv., ch. 259, §§ 3–4 (H.B. 10-1352). Noting this change, the CCA reasoned as follows: "Because these offenses are described in different statutes and have different titles, it is clear the legislature intended to punish these offenses separately." (ECF No. 1-1 at 4.)

Moore disagrees with this reasoning, but Moore fails to grasp that his disagreement does not raise a question of contradiction or unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The CCA identified the correct rule from the U.S. Supreme Court's *Hunter* decision. In *applying* that rule, the CCA implicitly drew on *Abiodun*'s reasoning regarding how to discern whether the Colorado Legislature stated the specific intent to punish the same act under multiple proscriptions. But *Abiodun*'s reasoning is an explanation of *Colorado law* about how to interpret legislative intent *in Colorado*. If the CCA misapplied anything, it was only that, and such a misapplication raises no question of federal law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law").

At times, Moore has pointed to a statement in *Meads v. People*, 78 P.3d 290 (Colo. 2003), *abrogated on other grounds by Reyna-Abarca v. People*, 390 P.3d 816 (Colo. 2017), that a court inquiring whether the Colorado Legislature intended to doubly

11

punish the same act must first look for "express legislative authorization," and, if none exists, "the court must ascertain whether the offenses are sufficiently distinguishable to permit the imposition of multiple punishments." *Meads*, 78 P.3d at 293. But this is only a statement of Colorado law about how to discern the Colorado Legislature's intent. *See id.* (citing only Colorado case law in support of this two-step analysis). It is not a statement of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Moore does not point to, nor is this Court aware of, any Supreme Court precedent clearly establishing the method by which state courts must determine if their respective legislatures intended multiple proscriptions and punishments to apply to the same act.

The distinction between clearly established federal law versus state law is also why the Colorado Supreme Court's later decision in *Davis*, *supra*, is irrelevant for § 2254 purposes.[1] In *Davis*, the Colorado Supreme Court faced the same question it decided in *Abiodun*, although specifically from the perspective of whether simple possession is a lesser included offense of distribution. 352 P.3d at 957–58. The Colorado Supreme Court concluded that simple possession, despite its relocation to a new statutory section, is a lesser included offense of distribution and therefore cannot be punished separately. *Id.* at 957–58 & n.3.

Importantly, *Davis* did not say—nor could it establish as a matter of federal law—

---

[1] The CCA decided Moore's case on May 14, 2015. (*See* ECF No. 1-1 at 1.) The Colorado Supreme Court decided *Davis* on June 1, 2015. The fact that *Davis* post-dated the CCA's decision does not, by itself, make *Davis* irrelevant. Assuming *arguendo* that *Davis* announces a principle of law applicable here, the rule of *Davis* could still apply because Moore's conviction had not become "final" for habeas purposes when *Davis* was announced. At a minimum, Moore's time for seeking Colorado Supreme Court and U.S. Supreme Court review had not expired. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez*, 565 U.S. at 150.

12

that dual punishments for greater and lesser-included offenses violate the Double Jeopardy Clause. Rather, after *Hunter*, it is clear that such dual punishments would *not* violate the Double Jeopardy Clause *if* the state legislature intended to impose dual punishments. *Davis* thus turned on legislative intent, and in this respect, the court had a unique advantage because a Colorado statute establishes that a defendant "may not be convicted of more than one offense if * * * [o]ne offense is included in the other." Colo. Rev. Stat. § 18-1-408(1)(a); *see also Davis*, 352 P.3d at 957 ("Although the legislature may define multiple offenses and authorize multiple punishments based on the same behavior . . . , a defendant may not be punished multiple times for the same conduct if '[o]ne offense is included in the other,' § 18-1-408(1)(a), C.R.S. (2014)."). In other words, the Colorado Legislature had already stated its clear intent that it did *not* intend multiple punishments if one crime is a lesser included offense of another. The only question for the Colorado Supreme Court, then, was whether simple possession was a lesser included offense of distribution, and—applying *Colorado* law—the court held that the answer was "yes." So, as before, the outcome did not turn on application of federal law established by the U.S. Supreme Court.

If Moore has any claim, it would be based on the CCA's refusal to rehear the case, or the Colorado Supreme Court's refusal to grant certiorari, thus (apparently) treating him differently than the defendant in *Davis*. However, he has not advanced this claim. Moreover, "the Fourteenth Amendment does not assure uniformity of judicial decisions or immunity from judicial error. Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 554–55 (1962) (internal quotation marks and citations

13

omitted; alterations incorporated); *cf. Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (". . . Cummings has cited to no United States Supreme Court decisions, and our own independent research has failed to produce any, holding that a state court's erroneous application of state criminal law can result in a violation of a criminal defendant's equal protection rights.").

In sum, the only clearly established federal law regarding Double Jeopardy, for § 2254 purposes, is *Hunter*'s charge that the intent of the state legislature controls. For present purposes, this Court is thus limited to asking, "Did the state court look to the specific intent of its legislature?" If the answer is "yes," the inquiry ends. The Court has no jurisdiction to hold that a state court reached the wrong conclusion under state law regarding the state legislature's intent, even if a later state supreme court decision appears to show as much. It is simply not a question of misapplying federal law.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is DISMISSED for lack of subject matter jurisdiction, or, alternatively, DENIED on its merits;

2. The Magistrate Judge's October 10, 2017 Recommendation (ECF No. 30) is VACATED AS MOOT, or, alternatively, ADOPTED;

3. The Clerk shall enter judgment accordingly and shall terminate this case. All parties shall bear their own fees and costs.

Dated this 15th day of June, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge